IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Love, | ) | 3:25-cv-789-JDA |
| | ) | Civil Action No. __:__-_____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | *Jury Trial Requested* |
| Adam Maisano, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Michael Love ("Plaintiff") sets forth his Complaint for contribution and indemnity against the above-captioned Defendant Adam Maisano ("Defendant") and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff is a citizen and resident of the State of Florida.

2. Defendant is a citizen and resident of the State of Georgia.

3. As set forth below, the amount in controversy exceeds $75,000.00.

4. This Court has diversity jurisdiction over the matters complained of herein in accordance with 28 U.S.C. § 1332 as the guaranty that is the subject of this litigation was entered into in Columbia, South Carolina.

5. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(2).

6. Undersigned counsel endorses that venue is proper in the Columbia Division under either Local Rule 3.01(A)(1) or (A)(2).

1

## FACTUAL ALLEGATIONS

7. On or about June 30, 2020, Plaintiff, Defendant, Jonathan Sanchez, and Rodney Slick (collectively, "Members") entered into and executed an Operating Agreement for the purpose of establishing an LLC under the name 212 Motors Holding Group, LLC ("Holding Group").

8. Pursuant to the Operating Agreement, attached hereto as **Exhibit 1**, the membership interests were established as follows:

   a. Plaintiff having 20.00% interest;

   b. Defendant having 33.33% interest;

   c. Jonathan Sanchez having 33.33% interest; and

   d. Rodney Slick having 13.34% interest.

9. Under the terms of the Operating Agreement, the Members agreed to divide the net profits and to bear the net losses according to each Member's percentage of interest. (Exhibit 1, p.3).

10. On or about November 17, 2020, the Members formed an operating limited liability company for the purpose of running a car dealership in Columbia, South Carolina, under the name 212 Motors Columbia, LLC ("Operating Company"), with the Holding Group as the sole member of the Operating Company.

11. Defendant was named president of the Operating Company, while Plaintiff, Jonathan Sanchez, and Rodney Slick were named vice presidents.

12. By making the Holding Group the sole member of the Operating Company, the Members agreed to divide the net profits and bear the net losses according to each Member's percentage of interest.

3:25-cv-00789-JDA     Date Filed 02/11/25     Entry Number 1     Page 3 of 13

13. On February 9, 2021, South State Bank made a commitment to the Operating Company for a line of credit in the amount of $1,000,000.00, with a maturity date one (1) year following the date of closing of the Loan. South State Bank's commitment letter is attached hereto as **Exhibit 2**.

14. One of the conditions of South State Bank's commitment was the Loan being "unconditionally guaranteed, jointly and severally" by the Members of the Holding Group, as well as 212 Motors of Florence, LLC, a sister operating company based in Florence. (Exhibit 2, p.2).

15. On April 7, 2021, the Members closed on Loan Number 17000002635 on behalf of the Operating Company, as borrower, with South State Bank, as Lender ("Loan"). The executed Loan closing documents are attached hereto as **Exhibit 3**.

16. In accordance with South State Bank's commitment, the Loan provided the Operating Company with a line of credit in the amount of $1,000,000.00, and the Loan had a maturity date April 7, 2022, one (1) year after the closing date of the Loan. (Exhibit 3, p.15).

17. Pursuant to the terms of the Loan, the Loan was personally guaranteed by the Members, including Plaintiff, Defendant, Jonathan Sanchez, and Rodney Slick. (Exhibit 3, pp. 17, 24, & 29-44).

18. The Loan was also commercially guaranteed by 212 Motors Florence, LLC. *Id*.

19. The Members obligations as guarantors under the loan were memorialized by the Promissory Note (Exhibit 3, pp. 15-17), the Business Loan Agreement (Exhibit 3, pp. 22-28), and each Member's respective Commercial Guaranty (Exhibit 3, pp. 29-44), all of which were executed on April 7, 2021.

20. The Promissory Note specifically provides that "[t]he obligations under this Note are joint and several." (Exhibit 3, p.17).

3

21. The Business Loan Agreement specifically lists each guarantor—including Defendant—as guarantors of the Loan for the full amount of $1,000,000.00. (Exhibit 3, p.24).

22. Defendant's Commercial Guaranty specifically states that Defendant "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." (Exhibit 3, p.38).

23. On May 25, 2022, the Members executed an Extension Agreement with South State Bank, which extended the maturity date of the Loan from April 7, 2022, to July 7, 2022. The First Extension Agreement is attached hereto as **Exhibit 4**.

24. On August 22, 2022, the Loan was renewed by agreement of the Members and South State Bank. This renewal is memorized by a Promissory Note dated August 22, 2022 ("Renewal Promissory Note") (collectively with the Promissory Note, "the Note"), which is attached hereto as **Exhibit 5**.

25. The Renewal Promissory Note updated the maturity date to August 22, 2023, but otherwise incorporated all the terms, conditions, and guaranties of the original Loan, including Defendant's Commercial Guarantee dated April 7, 2021. (Exhibit 5, pp. 1-3).

26. The Renewal Promissory Note also specifically provides that "[t]he obligations under this Note are joint and several." (Exhibit 5, p.3).

27. Before the Loan reached maturity on August 22, 2023, a final extension was granted on the Loan by South State Bank, extending the maturity date to February 22, 2024.

28. Ahead of the February 22, 2024 maturity date, it was apparent that neither the Operating Company nor the Holding Group had sufficient assets to satisfy the Loan.

29. On January 17, 2024, all Members were sent a Notice of Special Meeting for the Holding Group ("Notice"), calling the Members to a Special Meeting at 10:00 A.M. on Monday, January 29, 2024, at the Operating Company's physical address in Columbia, SC. A copy of the Notice is attached hereto as **Exhibit 6**.

30. As set forth on the Notice, the purpose of this Special Meeting was to "discuss repayment of the Loan and the guaranties of the Members of the Holding Group." (Exhibit 6, p.1).

31. Upon information and belief, Defendant received the Notice.

32. Upon information and belief, Defendant intentionally ignored the Notice.

33. On January 29, 2024, Defendant failed to appear for the Special Meeting. All other Members were in attendance.

34. Having a quorum in Defendant's absence, Plaintiff, Jonanthan Sanchez, and Rodney Slick all voted in favor of proceeding with the Special Meeting to resolve the imminent company business presented by the approaching maturity date on the Loan.

35. At the Special Meeting, Plaintiff, Jonathan Sanchez, and Rodney Slick unanimously agreed to the following:

    a. The Operating Company and the Holding Group were unable to satisfy the Loan on February 22, 2024;

    b. The Members, therefore, were obligated to satisfy the Loan as guarantors with personal funds;

    c. The Members would reach out to South State Bank to request outstanding principal and interest due for payoff, and the payoff total would be divided based on each members pro rata share of interest in the Holding Group;

    d. Membership interest was confirmed as follows: Adam Maisano 33.33%, Jonathan Sanchez 33.33%, Michael Love 20.00%, and Rodney Slick 12.34%; and

    e. The Members agreed that each shareholder would provide check payment for their allocated pro rata portion of the Loan payoff on or before February 20, 2024, with checks payable to South State Bank with the appropriate loan number. (Exhibit 7, p.2).

36. The decisions from the Special Meeting were communicated to Defendant, and a copy of the Minutes of Special Meeting is attached hereto as **Exhibit 7**.

37. On February 20, 2024, all Members—except Defendant—made payments towards the outstanding balance of the Loan, satisfying their pro rata obligations as guarantors of the Loan.

38. Defendant failed to make payment towards the outstanding balance of the Loan.

39. Upon information and belief, Defendant has the financial means necessary to pay and satisfy his obligations under the Loan.

40. Upon information and belief, despite repeated demands, Defendant told Plaintiff and the other Members that he would not make payment towards the balance of the Loan.

41. Because Defendant refused to pay, there was an outstanding balance on the Loan of $325,997.58 as of February 22, 2024.

42. Because Defendant refused to pay, interest continued to accrue on the outstanding balance of the Loan at a rate of $72.44 per day.

43. To mitigate losses and prevent further accrual of interest, Plaintiff executed the Loan Satisfaction Agreement with South State Bank on October 30, 2024, and paid off the remaining balance of the Loan. The Loan Satisfaction Agreement is attached hereto as **Exhibit 8**.

44. The Loan Satisfaction Agreement specifically provides that "Lender acknowledges and agrees that this Satisfaction Agreement shall not be deemed to limit or impair [Plaintiff']s right to seek or pursue contribution or reimbursement from any other Loan Party, including as a subrogee to Loan Documents."  (Exhibit 8, p.3).

45. The Loan Satisfaction Agreement defines the "Loan Parties" as including Plaintiff "and all other guarantors or endorsers of the Loan[.]"  (Exhibit 8, p.2).

46. As a direct result of Defendant's refusal to pay in satisfaction of his obligations as guarantor on the Loan, Plaintiff was forced to pay $346,034.02.  (Exhibit 8, p.2).

47. As a direct result of Defendant's refusal to satisfy his obligations as a Member and personal guarantor on the Loan, Plaintiff also suffered losses in costs and fees associated with negotiating and executing the Loan Satisfaction Agreement.

## **FOR A FIRST CAUSE OF ACTION**
*(Contribution Under S.C. Code Ann. § 36-3-116)*

48. The allegations contained in the foregoing paragraphs are incorporated by reference as if restated verbatim herein.

49. The Note executed in connection with the Loan is considered a negotiable instrument under S.C. Code Ann. § 36-3-104.

50. While the Operating Company was the borrower under the Note, each member of the Holding Group, including Plaintiff and Defendant, signed the Note as members of the Holding Group and each member, including Defendant, signed the Guaranty.

51. By signing the Note as a member of the Holding Group, which was the sole member of the borrower, 212 Motors Columbia, LLC, Defendant is an "indorser" and his signature is deemed an "anomalous indorsement."  S.C. Code Ann. § 36-3-204(b); S.C. Code Ann. § 36-3-205(d).

52. Moreover, by signing as a guarantor of the Note, Defendant was acting as an "accommodation party," as his signature was "accompanied by words indicating the signer is acting as a surety or guarantor with respect to the obligation of another party to the instrument." S.C. Code Ann. § 36-3-419(c).

53. Both Plaintiff and Defendant signed the Note in the same capacity, as both anomalous indorsers and accommodation parties.

54. Both the Promissory Note and the Renewal Promissory Note specifically provide that "[t]he obligations under this Note are joint and several."

55. Defendant benefited, both personally and commercially, from the Loan and expenditures made with money from the Loan.

56. Defendant's refusal to make payment towards the balance of the Loan along with the other Members and personal guarantors on February 22, 2024 was unjustified.

57. By making payment towards the outstanding balance of the Loan on February 22, 2024, Plaintiff satisfied his pro rata share of liability as a guarantor of the Loan.

58. Defendant refused to pay and satisfy his obligations, despite having the financial ability to do so.

59. Defendant's refusal to satisfy his obligations was unjustified.

60. Defendant's refusal to make payment on the Loan caused additional interest to accrue.

61. Because of Defendant's refusal, Plaintiff was forced to pay more than his pro rata share to satisfy the Loan on October 30, 2024, pursuant to the Loan Satisfaction Agreement.

62. Under the statutory mandate set forth in S.C. Code Ann. § 36-3-116(b), Plaintiff is entitled to contribution from Defendant.

63. For contribution, Defendant owes Plaintiff the full amount paid by Plaintiff on October 30, 2024, including money paid toward interest, amounting to $342,534.02, as well as the costs and fees incurred by Plaintiff in negotiating and executing the Loan Satisfaction Agreement.

## FOR A SECOND CAUSE OF ACTION
*(Common Law Contribution)*

64. The allegations contained in the foregoing paragraphs are incorporated by reference as if restated verbatim herein.

65. Defendant has acknowledged his responsibility and indebtedness under the Loan and Guaranty, and he has acknowledged his responsibility for his pro rata share of liability as a guarantor of the Loan.

66. Written demand has been made upon Defendant for payment of his proportionate share under Guaranty of the Loan, which were still outstanding, and which totaled $325,997.58 as of February 22, 2024.

67. Defendant refused to pay and satisfy his obligations as a guarantor, despite having the financial ability to do so.

68. Defendant's refusal to make payment on the Loan caused additional interest to accrue.

69. Although demand for same has been made to and received by Defendant, he has failed and/or refused to contribute or pay his proportionate share of his obligations as guarantor under the Loan and no part of the $325,997.58 (or any interest thereon) has been paid by Defendant.

70. Because of Defendant's refusal, Plaintiff was forced to pay more than his pro rata share to satisfy the Loan on October 30, 2024, pursuant to the Loan Satisfaction Agreement, in the amount of $342,534.02.

71. By virtue of the above, Defendant is indebted to Plaintiff in the sum of $342,534.02 and this amount is now due, owing, and unpaid from Defendant to Plaintiff.

## FOR A THIRD CAUSE OF ACTION
*(Equitable Indemnity)*

72. The allegations contained in the foregoing paragraphs are incorporated by reference as if restated verbatim herein.

73. By entering into the Loan Satisfaction Agreement with South State Bank, Plaintiff settled and resolved any potential claim against the Members and personal guarantors with respect to the outstanding balance of the Loan. This also stopped the continued accrual of interest on the Loan, preventing further damage.

74. The Loan Satisfaction Agreement was a bona fide settlement relating to the loan and did not involve fraud or collusion by any of the parties to the Agreement.

75. Plaintiff was without fault of any kind related to the outstanding balance of the Loan prior to October 30, 2024.

76. But for Defendant's unjustified refusal to make payment towards the balance of the Loan and honor his duties as a Member and Personal guarantor, Plaintiff would not have been forced to enter into and pay money pursuant to the Loan Satisfaction Agreement.

77. By entering into the Loan Satisfaction Agreement and paying Defendant's pro rata share of the money owed, Plaintiff in no way assumed or accepted Defendant's liability as a Member and personal guarantor.

78. Rather, Plaintiff's decision to enter into the Loan Satisfaction Agreement was justified and reasonable under the circumstances and was done as a means of protecting Plaintiff's credit, preventing further accrual of interest, and preserving Plaintiff's other legitimate interests.

79. The amount paid pursuant to the Loan Satisfaction Agreement was reasonable in light of the circumstances.

80. Since satisfying the Loan, Plaintiff has attempted to resolve this dispute with Defendant; however, Defendant continues to make unjustified refusals to honor his obligations as a Member and personal guarantor on the Loan.

81. Plaintiff, therefore, has been forced to initiate this lawsuit against Defendant to recover money rightfully owed to Plaintiff.

82. Plaintiff is without fault in causing this dispute with Defendant.

83. Plaintiff is entitled to equitable indemnity from Defendant, including without limitation recovery of expenses incurred in settling Defendant's liability as to the Loan, in negotiating and executing the Loan Satisfaction Agreement, in bring and maintaining this lawsuit.

84. Plaintiff is entitled to recover attorney's fees from Defendant.

## FOR A FOURTH CAUSE OF ACTION
*(Equitable Subrogation)*

85. The allegations contained in Paragraphs 1 through 47 are incorporated by reference as if restated verbatim herein. This cause of action is plead in the alternative to Plaintiff's claims for contribution and indemnity.

86. Plaintiff paid the sum of $342,534.02 to satisfy the Loan and the debt represented by the Note.

87. Plaintiff had a direct interest in the discharge of the Loan and the debt represented by the Note.

88. The Operating Company was the primary obligee of the Note and, therefore, was primarily liable for the debt.

89. As a guarantor of the Note, Plaintiff was secondarily liable for the debt and satisfaction of the Loan.

90. Because the Operating Company and the Holding Group were unable to satisfy the debt, the Members—in Defendant's willing absence—held a meeting to determine how the satisfy the obligations under the Note.

91. The Members—in Defendant's willing absence—acknowledged their secondary obligation to satisfy the debt and voted in favor of each Member making payment towards the debt in accordance with their respective membership interests.

92. Defendant unjustifiably refused to pay his pro rata share of the debt.

93. Due to Defendant's unjustified refusal to pay, Plaintiff was forced to pay an additional $342,534.02 to satisfy the Loan and the outstanding debt represented by the Note.

94. Pursuant to the Loan Satisfaction Agreement and as a matter of equity stemming from Plaintiff satisfying Defendant's portion of the debt, Plaintiff has the right to seek reimbursement as a subrogee under the Loan Documents. (Exhibit 8, p.3).

95. Upon information and belief, Defendant had and continues to have the ability to pay his pro rata share of the debt represented by the Note.

96. The interests of justice and equity would be served by Defendant paying his pro rata share of the debt, and no injustice would be done by such an allowance of the equity.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment against Defendant Adam Maisano as follows:

a. That judgment is entered against Defendant Adam Maisano requiring him to pay Plaintiff full contribution related to the Loan under South Carolina law;

b. That Defendant Adam Maisano is required to indemnify Plaintiff for all the costs and fees associated with the Loan Satisfaction Agreement, including interest accrued on the Loan;

c.  That Defendant Adam Maisano is required to indemnify and/or reimburse Plaintiff for all the costs and attorneys' fees associated with this action;

d.  For all costs of Court; and

e.  Any other such relief as this Honorable Court may determine.

Respectfully submitted,

**WILLIAMS MULLEN**

*s/ William P. DuBose, IV*
John G. Tamasitis (Fed Bar No. 11195)
jtamasitis@williamsmullen.com
William P. DuBose IV (Fed Bar No. 14211)
wdubose@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803-567-4615
Fax: 803-567-4601

*Attorneys for Plaintiff Michael Love*

February 11, 2025
Columbia, South Carolina

13